UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN STATES TRUCKING ASSOCIATION, | No. 2:18-cv-01989-MCE-KJN |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| ANDRE SCHOORL, Acting Director of the California Department of Industrial Relations; XAVIER BECERRA, Attorney General for the State of California, and DOES 1-50, | |
| Defendants. | |

Through the present action, Plaintiff Western States Trucking Association ("Western States") challenges a recent California Supreme Court decision, <u>Dynamex Operations West, Inc. v. Superior Court</u>, 4 Cal. 5th 903 (2018) on grounds that the so-called "ABC test" adopted by <u>Dynamex</u> for determining whether a worker should be deemed an employee or an independent contractor is preempted both by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501 et seq. ("FAAAA") and federal safety regulations, and further violates the dormant Commerce Clause of the United States Constitution. Western States has sued Defendant Andre Schoorl, as the individual in charge of the California Department of Industrial Relations, who it identifies as the agency in charge of implementing the test adopted by Dynamex. Western States

1    has also named California Attorney General Xavier Becerra as a Defendant on grounds

2    that Becerra is responsible for enforcing the test.

3         Now before the Court is Defendant Becerra's Motion to Dismiss (ECF No. 6), as

4    joined by Defendant Schoorl (ECF No. 11) (hereinafter "Defendants" unless otherwise

5    specified).  Defendants first claim that Western States lacks standing to assert its claims

6    to enjoin application of the ABC test, and that accordingly jurisdiction is lacking under

7    Federal Rule of Procedure 12(b)(1).  Defendants then assert that because Western

8    States cannot succeed on its preemption arguments under the FAAAA, applicable

9    federal motor vehicle safety regulations, or the so-called Dormant Commerce Clause of

10   the United States Constitution, Western States' lawsuit fails to state a claim upon which

11   relief can be granted under Rule 12(b)(6) in any event.  As set forth below, while the

12   Court does find that Western States has standing to pursue its claim, Defendants' Motion

13   is nonetheless GRANTED on its merits.

14

15                              **BACKGROUND**[1]

16

17        Western States is a nonprofit trade association with over 1,000 member

18   companies and 5,000 affiliated member motor carriers.  Western States' member

19   carriers operate in interstate, intrastate, and foreign commerce, and range in size from

20   single truck owner-operators, to fleets with over 350 trucks.   According to Western

21   States, given fluctuating demand for trucking services, companies have hired smaller

22   carriers on a temporary basis for decades, and those smaller carriers frequently hire

23   their services out to contractors and other trucking companies as independent

24   contractors.  Thousands of non-employee independent contractors are used in the

25   industry as a result, including owner-operators who both own and drive their own

26   ///

27   _____

28        [1] The allegations contained in this section are drawn, sometimes verbatim, from Western States'
     Complaint.  ECF No. 1.

equipment.  In addition, the trucking industry also includes brokerage services that arrange for such independent contractors to provide transportation services.

In its 2018 Dynamex decision, the California Supreme Court articulated a new standard, the so-called ABC test, in order to distinguish between employees and independent contractors for purposes of California's wage orders.  Wage orders are constitutionally-authorized, quasi-legislative regulations issued by the California Industrial Welfare Commission to provide for both minimum wages and the general welfare of employees.  Dynamex, 4 Cal. 5th at 914, n.3.  The California Department of Industrial Relations, the agency headed by Defendant Schoorl, is responsible for enforcing the state's labor laws, including the Commission's wage orders.  Huntington Mem'l Hosp. v. Superior Court, 131 Cal. App. 4th 893, 902 (2005).

Factually, Dynamex involved a dispute between Dynamex and two individual delivery drivers, who alleged that they were misclassified as independent contractors rather than employees in violation of both Wage Order No. 9, the applicable state wage order governing the transportation industry, and various provisions of the California Labor Code.  See Dynamex, 4 Cal. 5th at 914.   According to the drivers, Dynamex's policy under which all drivers were considered independent contractors rather than employees violated the law.

In resolving the issue, the Court looked to the fact that for purposes of California wage orders, the term "employ" means not only to be employed by an employer or subject to the direction of one who "exercises control over the wages, hours, or working conditions of a person," but also to "engage, suffer, or permit to work."  Id. at 926-927.[2] It noted that its previous decisions, most notably the case of S.G. Borello & Sons v. Dept. of Ind. Relations, 48 Cal. 3d 341 (1989) focused on the intended scope and purpose of particular statutory provisions that considered the employer's control over the details of work performed (the so-called "statutory purpose" standard, see Dynamex,

---

[2] Significantly, while for purposes of Wage Order No. 9 these definitions appear in the California Code of Regulations, tit. 8, § 11090(2), the same definitions "are also included in each of the other 15 wage orders governing other industries in California." Id. at 926, fn.9.

4 Cal. 5th at 934-35).  Because the wage orders include an alternate definition of employ

as meaning to "engage, suffer or permit to work", however, <u>Dynamex</u> reasoned that

definition also had to be considered in assessing the scope of employment under the

wage orders.  Finding the term to be "exceptionally broad," <u>Dynamex</u> found that the

suffer or permit to work standard had to be "interpreted and applied broadly to include

within the covered 'employee' category all individual workers" reasonably viewed as

working within the hiring entity's business.  <u>Id.</u> at 952-953, citing <u>Martinez v. Combs</u>,

49 Cal. 4th 35, 69 (2010).  That made for a more wide-range and inclusive definition of

employment than had previously been applied.  Accordingly, for purposes of California

wage orders, and given the protective history and purpose of the suffer or permit to work

standard contained therein, <u>Dynamex</u> rejected a multifactor, totality-of-the-circumstances

standard for distinguishing between employees and independent contractors (which it

found difficult to easily and consistently apply, particularly in advance).  <u>Id.</u> at 954-56.

Instead, <u>Dynamex</u> held that, for purposes of California wage orders, the burden should

be placed on the hiring entity to establish that the worker was an independent contractor

under the three-part ABC test.  That test requires that <u>each</u> of the following factors be

established:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; <u>and</u> (B) that the worker performs work that is outside the usual course of the hiring entity's business; <u>and</u> (c) that the worker is customarily engaged in an independently established trade, occupation or business of the same nature as the work performed.

<u>Id.</u> at 957.

According to Western States, this test fundamentally "discarded decades of

settled California law" by discarding previous precedent for assessing whether an

individual is deemed an employee or an independent contractor.  Compl., ¶ 32.

Western States avers that because trucking business models were developed in light of

that prior precedent, as set forth in <u>Borello</u>, the implications of <u>Dynamex</u> for determining

employee status "throws into question the legality of the entire trucking industry in California." Id. at ¶ 33. By requiring that independent contractors not be engaged in the same work as the hiring entity, Western States claims that Dynamex upends its members' flexibility to hire small, independent carriers, and especially owner-operators, for transportation needs. As such, according to Western States, Dynamex limits the ability of its members to easily obtain drivers on a short-term basis without making those drivers employees. Moreover, as a result of the additional expense attendant with conferring employee status, Western States opines that its members could be forced to raise prices, reduce services, and/or limit available routes.

As indicated above, Western States' Complaint makes three primary claims. First, it contends that the ABC test adopted by Dynamex directly impacts the price, routes, and services of its motor carrier members, and is therefore preempted by federal law in the form of the FAAAA. Second, Western States claims that the ABC test "on its face discriminates against out-of-state and interstate trucking companies," thereby violating the dormant Commerce Clause of the United States Constitution. Compl. at ¶¶ 64-66. Third and finally, Western States maintains that the ABC test is preempted in any event for the Federal Motor Carrier Safety Regulations as enacted at 49 C.F.R. §§ 300-399. Id. at ¶¶ 68-69. Western States' lawsuit seeks both declaratory and injunctive relief prohibiting enforcement of the employment standard announced by Dynamex.

In now moving to dismiss this lawsuit, Defendants claim as a preliminary matter that Western States lacks standing to pursue this lawsuit because, in the lack of a concrete legal dispute, Western States in essence seeks an advisory opinion not ripe for judicial adjudication. The International Brotherhood of Teamsters ("IBT"), whose intervention request in this matter was granted by Order filed November 13, 2018 (ECF No. 27) submitted its own brief in support of Defendants' Motion (ECF No. 6), and that brief posits another standing argument. According to IBT, the allegations of Western States' Complaint are insufficient to confer associational standing since there has been

no showing that any Western States' member has suffered or will suffer harm in the aftermath of the <u>Dynamex</u> decision.

On a substantive basis, both Defendants and IBT argue that the FAAAA does not preempt <u>Dynamex's</u> interpretation of state law, since its criteria for establishing a viable independent contractor relationship has "no more than [an] indirect remote and tenuous" impact on prices, routes and services subject to FAAAA oversight, and consequently is not preempted. <u>See</u> <u>Californians for Safe and Competitive Dump Truck Transp. v. Mendonca</u>, 152 F.3d 1184, 1189 (9th Cir. 1998). Defendants also point out that under another Ninth Circuit decision, <u>Dilts v. Penske Logistics, LLC</u>, 769 F.3d 637 (9th Cir. 2014), the Court further noted that in enacting the FAAAA, Congress did not "intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services." <u>Id.</u> at 644.

With regard to Western States' claim that regulations promulgated by the Federal Motor Carrier Safety Administration ("FMCSA") also serve to preempt <u>Dynamex</u>, Defendants and IBT again claim that under the circumstances of this matter supplemental state regulation is proper, particularly since no conflict between the federal regulations and <u>Dynamex</u> is present. Finally, with regard to Western States' claim that the ABC test adopted by <u>Dynamex</u> violates the Dormant Commerce Clause, Defendants and IBT maintain that any burden imposed on interstate commerce by the test is not excessive in relation to state interests in properly classifying employees.

**STANDARD**

### A. Motion to Dismiss under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions. <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. <u>Id.</u> Because subject matter jurisdiction involves a court's power to hear a

case, it can never be forfeited or waived. <u>United States v. Cotton</u>, 535 U.S. 625, 630 (2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[3] <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 506 (2006); <u>see also</u> <u>Int'l Union of Operating Eng'rs v. Cnty. of Plumas</u>, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 583 (1999). Indeed, "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." <u>Id.</u>; <u>see</u> Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack, and a factual attack. <u>Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979). Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. <u>Id.</u>

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. <u>Savage v. Glendale High Union Sch. Dist. No. 205</u>, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. <u>Id.</u> However, in the case of a factual attack, district courts "may review evidence beyond the ///

_____

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

7

complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.

In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." Thornill, 594 F.2d at 733 (internal citation omitted). The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)). Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733. If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

8

1013 (9th Cir. 2005)); <u>Ascon Props., Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

### B. Motion to Dismiss under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." <u>Twombly</u>, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." <u>Id.</u> (citing Wright & Miller, <u>supra</u>, at 94, 95). A pleading must contain "only enough facts to state a claim to

relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

A.      **Standing**

1.      **Concrete Legal Dispute**

As Defendants point out, the Declaratory Judgment Act requires, as a prerequisite for litigating parties' rights, that an "actual controversy" be present. 28 U.S.C. § 2201(a). In order to satisfy this fundamental standing requirement, Western States must show

10

that its dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests, and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  MedImmune Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

According to Defendants, there is no concrete legal dispute here that confers standing on Western States to seek legal redress.  To the contrary, Defendants submit that Western States simply seeks an advisory opinion as to whether potential application of the ABC test adopted by Dynamex could violate its members' rights under federal law. While Defendants concede that a "genuine threat of imminent prosecution" can meet the case or controversy requirement, they maintain that this matter lacks any allegation of threatened enforcement at all.  See Thomas v. Anchorage Equal Rights Com'n, 220 F.3d 1134, 1139 (9th Cir. 2000).  IBT, for its part, contends that Western States has failed to identify even one member who has any "concrete plan" to not comply with Wage Order No. 9 as construed by Dynamex, let alone whether there has been any specific warning or threat to initiate proceedings to demonstrate that Dynamex will be imminently enforced against that member.  As such, both Defendants and IBT argue that this matter should be dismissed for lack of subject matter jurisdiction given the lack of any justiciable controversy.

Western States takes issue with these contentions.  As alleged in its Complaint, it has over 1,000 member companies and another 5,000 affiliated member carriers who provide work for some 10,000 drivers, mechanics, support personnel and managers. Compl, ¶ 1.  In addition to claiming that any of those workers could initiate a misclassification claim at any point, Western States goes on to allege that the probability of such claims goes beyond mere speculation.  It points out that in just one of California's 58 counties, at least seven class action lawsuits expressly based on Dynamex were filed within the first three months following issuance of the Dynamex decision.  Pl.'s Opp., 4:27-5:1.  Western States maintains that this flurry of complaints

shows that the threat of legal liability is quite real. Moreover, and in any event, Western

States goes on to claim that the circumstances of this matter show that its members

"have a concrete interest in knowing whether they need to dramatically change their

business models in order to insulate themselves from liability" in the wake of Dynamex,

particularly since they routinely use independent subcontractors as subhaulers. Id. at

6:12-22. According to Western States, to the extent it identifies a conflict between state

and federal regulations (here the California Supreme Court's holding in Dynamex versus

the strictures of the FAAAA and Federal Motor Carrier Safety Regulations) that alone

can create a justiciable controversy. See, e.g., First Fed. Sav. and Loan Ass'n of

Boston v. Greenwald, 591 F.2d 417, 423 (1st Cir. 1979) (discussing cases which provide

that state and federal regulations subjecting parties to conflicting requirements can

present a sufficient controversy).

The Court finds Western States' position to be persuasive. It has shown that

application of the Dynamex ABC test not only fundamentally affects its current business

model in how independent contractors are characterized, but also has already spawned

litigation given the purported sea change that Dynamex represents in terms of those

relationships. A sufficiently concrete controversy has been demonstrated to confer

jurisdiction.

## 2.    Associational Standing

As indicated above, in addition to supporting Defendants' claim that Western

States has failed to show any real legal controversy, the IBT goes one step further in

also arguing that no associational standing is present. According to IBT, an association

like Western States has standing to represent its members' interests only when the

operative complaint "make[s] specific allegations establishing that at least one identified

member has suffered or would suffer harm." Summers v. Earth Island Inst., 555 U.S.

488, 498 (2009). Similar to the case and controversy addressed above, mere

speculation does not suffice; instead, an organization must "identify members who have

suffered the requisite harm" to establish standing. Id. at 499. IBT posits that because

12

Western States has failed to identify even one such member, its complaint must be dismissed.

Western States claims that the IBT's arguments go too far. They maintain that associational standing is present upon allegations that "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Warth v. Seldin, 422 U.S. 490, 511 (1975). They point to the requirements of associational standing as follows:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977).

Here, given Western States' claim that virtually all of its members use independent contractor trucking companies to handle dramatically fluctuating workloads, and have a concrete interest in knowing whether their employee classification must be fundamentally changed post-Dynamex, the Court believes that associational standing is also present.

Summers is distinguishable from the present matter inasmuch as in that case, it appears clear that the only dispute involving a concrete timber salvage project had settled, with "no other project before the court in which respondents were [even] threatened with injury in fact." Summers, 555 U.S. at 491-92. Under those facts, the Summers court observed that "[w]e know of no precedent for the proposition that when a plaintiff has sued to challenge the lawfulness of certain action or threatened action but has settled that suit, he retains standing to challenge the basis for that action." Id. at 494. Here, on the other hand, Western States avers that the challenge facing its members in the wake of Dynamex remains very much alive. Moreover, Ninth Circuit cases decided after Summers have recognized that the case does not extend as far as IBT would

13

advance. As the court in <u>National Council of La Raza v. Cegavske</u>, 800 F.3d 1032, 1041

(9th Cir. 2015) recognized:

> We are not convinced that <u>Summers</u>, an environmental case brought under the National Environmental Policy Act, stands for the proposition that an injured member of an organization must always be specifically identified in order to establish Article III standing for the organization.

Importantly for purposes of the present matter, the Ninth Circuit went on to find:

> Where it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organizations claim of injury, we see no purpose to be served by requiring an organization to identify by name the member or members injured.

<u>Id.</u>

As in <u>Cegavske</u>, here it appears virtually uncontroverted that Western

States' members will be impacted by the ABC test by either fundamentally changing its

use of independent contract companies and owner-operators in favor of employee

drivers, or face liability for doing so. IBT has failed to show the need for identifying any

particular member in order to address the predominantly legal claims asserted by

Western States, and therefore its associational standing argument fails.

Having determined that the Court has jurisdiction to entertain this matter, the

Court now turns to the substantive issues raised by Western States, as well as

Defendants' claims that those claims necessarily fail and should accordingly be

dismissed under Rule 12(b)(6).

**B.     FAAAA Preemption**

According to Western States, the FAAAA preempts the ABC test adopted by the

California Supreme Court in <u>Dynamex</u> to determine who qualifies as an employee for

purposes of California's wage orders. The preemption clause of the FAAAA states in

pertinent part as follows:

///

///

14

> General Rule.  Except as provided in paragraphs (2) and (3),
> a State [or] political subdivision of a State. . . may not entact or
> enforce a law, regulation, or other provision having the force
> and effect of law related to a price, route or service of any
> motor carrier. . . with regard to the transportation of property.

49 U.S.C. § 14501(c)(2).  In interpreting whether a state rule "relates to" a motor carrier's price, route or service,  this preemption provision should be "interpreted quite broadly." Independent Towers of Washington v. Washington, 350 F.3d 925, 930 (9th Cir. 2003). Nonetheless, this "does not mean that the sky is the limit".  California Trucking Ass'n v. Su, 903 F.3d 953, 960 (9th Cir. 2018).  Preemption does not occur when the law is a "generally applicable background regulation in an area of traditional state power that has no significant impact on a carrier's prices, routes or services."  Id. at 961; see also Dilts, 769 F.3d at 644.

In assessing whether the FAAAA preempts state law, the key question is congressional intent.  Wyeth v. Levine, 555 U.S. 555, 565 (2009).  If a federal statute contains an express preemption clause like that enumerated above for the FAAAA, federal courts must ascertain the substance and scope of that clause.  Altria Group, Inc. v. Good, 555 U.S. 70, 76 (2008).

In enacting the FAAAA, Congress resolved to displace certain aspects of state regulatory processes that "impeded the free flow of trade, traffic and transportation of interstate commerce."  Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 263 (2013). In so doing, Congress specifically targeted "a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide."  Id.  Consequently, as the California Supreme Court has noted, "the FAAAA was intended to prevent state regulatory practices including 'entry controls, tariff filing and price regulation, and regulation of types of commodities carried."  People ex rel. Harris v. Pac Anchor Transp., Inc., 59 Cal. 4th 772, 779-80 (2014) (citing legislative history).

The FAAAA's preemption clause has already been interpreted by the Supreme Court as preempting state laws that "aim directly at the carriage of goods" or have a

15

"'significant' impact' on carrier rates, routes or services, while at the same time not disturbing laws with only a "tenuous, remote or peripheral" connection to rates, routes, or services. Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 375 (2008) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 390 (1992) (emphasis in original).

In moving to dismiss Western State's FAAAA preemption claim, both Defendants and IBT argue that because California Wage Order No 9's substantive requirements have only a tenuous, remote and peripheral relationship to motor carriers' rates, routes, or services, and consequently lack any significant impact on said rates, routes, or services, its provisions as interpreted by Dynamex are accordingly not preempted. The Court agrees.

As indicated above, Wage Order No. 9 is the applicable wage order providing how persons employed in the transportation industry shall be paid. The definition of "employ," as requiring application of the ABC test pursuant to Dynamex, is not limited to Wage Order No. 9. Instead, that definition is also "included in the definitions set forth in each of the other 15 wage orders governing other industries in California." Dynamex, 4 Cal. 5th at 926, n.9. Consequently, while Wage Order No. 9 may specifically relate to the transportation industry, the rationale of Dynamex, which applies to all California wage orders in its application of the ABC test, does not. Consequently, Western States' attempt to distance itself from caselaw generally applicable to labor regulations, on grounds that Dynamex specifically targets the transportation industry, fails.

In Californians for a Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184 (9th Cir. 1998), the Ninth Circuit rejected a similar challenge to California's Prevailing Wage Law to the extent it prescribed minimum rates of compensation for workers in the transportation industry. Similar to the circumstances confronted in this matter, the parties in Mendonca argued that since complying with the Prevailing Wage Law would increase its labor costs and price structure, and potentially compel it to redirect and reroute equipment to compensate for lost revenue, the provisions of the FAAA should preempt application of the Law. The Ninth Circuit

disagreed, holding that this kind of effect upon prices, routes and services was "indirect, remote, and tenuous" and did not "frustrate[] the purpose of deregulation by acutely interfering with the forces of competition" so as to result in FAAAA preemption.  Id. at 1189.

Like Mendonca, Western States argues here that wage orders, which apply across the gamut of California industry, should be preempted simply because they happen to also include transportation workers.  Also like Mendonca, Western States claims that because application of California's wage laws may affect the cost of transportation services, they should be subject to FAAAA preemption.

Mendonca's holding that any such effects did not rise to the level of triggering preemption given their only indirect impact on prices, routes and services is equally applicable to this case.  Western States' argument that Mendonca should be distinguished on grounds it involves prevailing wage laws of general applicability is unavailing given the fact that the linchpin of Dynamex (that employment for purposes of California wage orders should be determined by reference to the ABC test) applies across the board as to all wage orders even though the particular wage order before the Court (Wage Order No. 9) happened to involve only the transportation industry.

Another more recent Ninth Circuit decision is also instructive.  In Dilts v. Penske Logistics, LLC, 769 F.3d 637 (9th Cir. 2014), the court held that the FAAAA did not preempt California's meal and rest break laws.  As Dilts noted, '[t]he sorts of laws that Congress considered included barriers to entry, tariffs, price regulations and laws governing the types of commodities that a carrier could transport," with Congress "not intend[ing] to preempt generally applicable state transportation, safety, welfare or business rules that do not otherwise regulate prices, routes, or services."  Id. at 644. Dilts consequently rejected any notion that the FAAAA preempted rules like prevailing wage laws or safety regulations on grounds that they are "several steps removed from prices, routes or services, "even if employers must factor [such] provisions into their decisions about the prices that they set, the routes that they use, or the services that

17

they provide." <u>Id.</u> at 646.  Consequently, according to Dilts, "California's meal and rest break laws plainly are not the sort of laws 'related to' prices, routes, or services that Congress intended to preempt."  Id. at 647.  And, as <u>Dilts</u> concluded, "even if state laws increase or change a motor carriers' operating costs, broad laws applying to hundreds of different industries with no other forbidden connection with prices, routes, and services -- that is, those that do not directly or indirectly mandate, prohibit, or otherwise regulate certain prices, routes, or services—are not preempted by the FAAAA."  <u>Id.</u> at 647 (internal quotes and citations omitted).   Here, too, <u>Dynamex's</u> interpretation of the term "employ" as used in California across-the-board wage orders does not run afoul of the FAAA simply because that interpretation may have some effect on transportation services.  Like <u>Dilts</u>, as well as <u>Mendonca</u>, any such effect is simply too remote.[4]

The California Supreme Court has also weighed in on whether the FAAAA preempts state regulation of employment conditions.  In <u>People ex rel Harris v. Pac Anchor Transportation, Inc.</u>, <u>supra</u>, the State of California sued a trucking company for unfair business practices, based in part on alleged violations of state employment laws, including Wage Order No. 9.  59 Cal. 4th at 776.  Reasoning that the challenged laws "make no reference to motor carriers, or the transportation of property", but instead "regulate employer practices in all fields and simply require motor carriers to comply with labor laws that apply to the classification of their employers", the California Supreme Court rejected preemption.  <u>Id.</u> at 785.   With specific reference to Wage Order No. 9, the court pointed out that to the extent prices, routes, or services were impacted, the effect was indirect and insufficient to warrant preemption.  <u>Id.</u>

Western States points to a 2018 Ninth Circuit case decided after <u>Dynamex</u>, <u>California Trucking Ass'n v. Su</u>, <u>supra</u>, as potentially calling for a different result, but again the Court disagrees.  As opposed to addressing the California wage orders

---

[4] The Court notes that Western States has filed a notice of supplemental authority as to findings made by the FMCSA on December 21, 2018 to the effect that California's meal and rest break laws were preempted.  <u>See</u> ECF No. 32.  While the FMCSA did decide that the state's meal and rest break requirements were preempted by the FMCSA Regulations' Hours of Services rules, it did not purport to reach the issue of FAAA preemption and accordingly is not dispositive on that issue.

confronted by the <u>Dynamex</u> court, <u>Su</u> dealt with the different question of whether the common-law <u>Borello</u> standard for determining independent contractor status is foreclosed by the FAAAA.  The <u>Su</u> court again reiterated that "Congress did not intend to preempt generally applicable state transportation, safety, welfare or business rules that do not otherwise regulate prices, routes, or services (903 F.3d. at 961), and found that the decisions in <u>Dilts</u> and <u>Mendonca</u> "all but dictate" a finding of no preemption.  <u>Id.</u> at 963.  Western States nonetheless seizes upon dicta in which <u>Su</u> discusses the ABC test and hypothecates that it may effectively compel a motor carrier to use employees because "providing a service within an employer's usual course of business will never be considered an independent contractor."  <u>Id.</u> at 964.  The Court goes on to observe that no showing has been made that "the <u>Borello</u> standard makes it difficult for [motor carriers] to use independent contractors to provide their services."  <u>Id.</u>

According to Western States, this signals a departure by the Ninth Circuit from its previous precedent, as represented by <u>Mendonca</u> and <u>Dilts</u>, with regard to application of the ABC test to preemption under the FAAAA.  Western States alleges that because <u>Dynamex</u> makes it "impossible" to hire independent contractors (Opp. 11:11-13), <u>Su</u> points towards preemption.  Again, the Court disagrees.  Nothing in either <u>Dynamex</u> or Wage Order No. 9 precludes a motor carrier from hiring an independent contractor for individual jobs or assignments; instead, all that is required if a carrier chooses to so hire is that the wage order's requirements be satisfied.  The mere fact that increased costs may result does not trigger preemption.  <u>Su</u>, 903 F.3d at 965; <u>Mendonca</u>, 152 F.3d at 1189; <u>Dilts</u>, 769 F.3d at 647.  Accordingly, the FAAAA does not preempt Dynamex' interpretation of California wage orders.[5]

///

<hr>

[5] Western States' reliance on a First Circuit decision, <u>Schwann v. FedEx Ground Package Sys.</u>, Inc., 813 F.3d 429 (1st Cir. 2016) in advocating a different result is unpersuasive inasmuch as <u>Schwann</u> is contrary to the Ninth Circuit's FAAAA preemption decisions in <u>Dilts</u> and <u>Mendonca</u>.  In addition, the Court is equally unpersuaded by the Central District's decision in <u>Alvarez v. XPO Logistics Cartage LLC</u> , et al., CV 18-03736 SJO (E) (C.D. Cal. November 15, 2018) given its reliance on <u>Schwann</u> and another First Circuit case, <u>Mass. Delivery Ass'n v. Healey</u>, 821 F.3d 187 (1st Cir. 2016) for the same proposition. The Court therefore also declines to follow <u>Alvarez</u> as to FAAAA preemption.

### C.     Preemption by Federal Motor Carrier Safety Regulations

In addition to urging FAAA preemption, Western States also claims that Dynamex's interpretation of California wage orders, to the extent they impact transportation, is preempted by regulations promulgated by the FMCSA, known as the Federal Motor Carrier Safety Regulations and codified at 49 C.F.R. §§ 300-399 (hereinafter "Regulations")  According to Western States, the Regulations "are so thorough, complete and detailed regarding every aspect of the trucking industry that they preempt state laws in the area of trucking and the transportation of goods, especially state laws which mandate an employer/employee relationship between parties that the federal regulations contemplate be independent contractors." Compl., ¶ 69.  The Regulations, however, are safety rules promulgated by the Federal Motor Carrier Safety act that regulate safety in the motor carrier industry, including issues pertaining to drug and alcohol use by motor carrier drivers, vehicle inspections, and driver's license standards.  See generally 49 C.F.R. §§ 300-399.  The Court is no more persuaded that the Regulations preempt Dynamex than it is by Western States' preemption argument under the FAAAA as already rejected above.

"[A]n agency regulation with the force of law can pre-empt conflicting state requirements" under certain conditions.  Wyeth v. Levine, supra, 555 U.S. at 576.  Those circumstances include instances where a "state or local law…. conflicts with such regulations or frustrates the purposes thereof."  City of New York v. FCC, 486 U.S. 57, 64 (1988).  In addition, an agency can in the proper circumstances "determine that its authority is exclusive and preempts any state efforts to regulate in the forbidden area."  Id.  Preemption is nonetheless not inferred simply because an agency's regulations are comprehensive.  R.J. Reynolds Tobacco Co. v. Durham Cty., N.C., 479 U.S. 130, 149 (1986).

As indicated above, the Regulations codify various safety requirements regarding the safety of motor carrier operations, and specify, with regard to their compatibility with state rules, that they "apply to any State that adopts or enforces laws or regulations

pertaining to commercial motor vehicle safety in interstate commerce." 49 C.F.R. § 355.3. The Regulations go on to preclude a state from having in effect any "law or regulation pertaining to commercial vehicle safety in interstate commerce which the Administrator finds to be incompatible with the provisions of the [Regulations]. Id. at § 355.25(a).

The Regulations are nonetheless not so comprehensive as to leave no place for supplementary state regulations. In rejecting any such construction, the court in Specialized Carriers & Rigging Ass'n v. Com. Of Va., 795 F.2d 1152, 1155 (4th Cir. 1987) pointed out that "Congress made clear in various sections of the Motor Carrier Safety Act that no such comprehensive preemption was contemplated or intended." Here, Dynamex's interpretation of California wage orders has, at best, only a tangential impact on safety concerns and do not conflict with the federal Regulations, which do not govern when an employee relationship exists or under what terms. Since preemption under the Regulations is limited to conflicting state regulations on "commercial vehicle safety" (see 49 C.F.R. § 355.25), and because the California wage orders do not so conflict, there is no preemptive effect.[6]

### D.    Dormant Commerce Clause Violation

Finally, Western States alleges that the ABC test "on its face discriminates against out-of-state and interstate trucking companies, and thus violates the so-called dormant Commerce Clause." Compl., ¶¶ 64-66.

The Commerce Clause empowers Congress to "regulate Commerce . . . among the several States." U.S. Const., art I, § 83, c. 3. "The modern law of what has come to

---

[6] While Western States again cites to the FMCSA's December 21, 2018 Decision (see ECF No. 32) as suggesting a contrary result, that Decision is distinguishable. Here, we are confronted with Dynamex's interpretation of what constitutes employment for purposes of California wage orders, an interpretation which does not significantly impact vehicle safety and does not conflict with the federal Regulations in any event. The December 21, 2018 Decision, on the other hand, found that California's meal and rest break rules imposed requirements in an area already addressed by the federal Regulations and were rules "on commercial motor vehicle safety" subject to preemption review. Decision, pp. 17-18. The FMCSA ultimately decided that the state's rules were preempted because they were "additional to or more stringent than the federal Regulations" and provided "no safety benefit beyond the safety benefit already provided" by the Federal Regulations. Id. at 21, 23. No such considerations are present here.

be called the dormant Commerce Clause is driven by concern about 'economic protectionism that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 337-338 (2008) (citing New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273-74 (1988). The key concern is whether "a challenged law discriminates against interstate commerce." Id. at 338. Economic protections or discrimination in this regard means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Or. Waste Sys., Inc. v. Dep't of Envt'l Quality of State of Or., 511 U.S. 93, 99 (1994). "Absent discrimination for [such] forbidden purpose, however, [a challenged] law 'will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" Davis, 553 U.S. at 338-39 (citing Pike v. Bruce Church, Inc., 397 US. 137, 142 (1970).

As Defendants point out, California's wage orders do not facially discriminate against interstate commerce but instead set out generally applicable requirements that apply equally to in-state, multi-state, and out-of-state employers within California. See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown, 567 F.3d 521, 525 (9th Cir. 2009) (finding no discriminatory effect where state law treats in-state and out-of-state entities the same); see also Yoder v. Western Express, Inc., 181 F. Supp. 3d 704, 720 (C.D. Cal. 2015) ("California's wage and hour laws regulate 'even handedly' as they apply to almost all employers within the state, not just to those engaged in interstate commerce"). Significantly, as Defendants note, Western States cites no provision of either California's wage orders or of the Dynamex decision that differentiates between in-state and out-of-state commerce. Indeed, as the court in Yoder noted, there is no evidence that California's wage and hour laws operate "in practice as anything other than an unobjectionable exercise of the State's police power." Id. at 723.

No prohibited discrimination has been identified here. In the absence of such discrimination a state statute that even-handedly regulates an issue to further valid local interests will not run afoul of the Dormant Commerce Clause so long as any effect on

interstate commerce is not excessive. <u>Sullivan v. Oracle Corp</u>., 662 F.3d 1265, 1271 (9th Cir. 2011). Here, because California's wage orders treat in-state and out-of-state residents equally, impose its minimum standards only with respect to work performed in California, and secure benefits for California employees[7] that are not clearly outweighed by any impediment to interstate commerce., "[t]here is no plausible Dormant Commerce Clause argument." <u>Id.</u> Western States' claim that that <u>Dynamex</u> invalidates the use of independent contractor drivers, and consequently affects interstate commerce is unavailing. As indicated above, California's wage orders do not prohibit the use of such drivers; instead, they simply provide a framework for establishing whether a given individual should be deemed an employee or an independent contractor.

**CONCLUSION**

For all the foregoing reasons, while the Court finds that it does have jurisdiction to hear this dispute and rejects Western State's standing arguments made pursuant to Rule 12(b)(1), it nonetheless finds that Western States has failed to state a viable claim against Defendants either on preemption or constitutional grounds. Accordingly, Western States' Complaint is dismissed in accordance with Rule 12(b)(6). Because the Court does not believe that the deficiencies of the Complaint can be rectified through amendment, no leave to amend will be permitted. The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: March 28, 2019

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[7] As noted, the basic objective of wage orders is to ensure that California workers "are provided at least the minimal wages and working conditions that are necessary to enable them to obtain a subsistence standard of living and to protect the workers' health and welfare." <u>Dynamex</u>, 4 Cal. 5th at 952.